**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Paolino,<br><br>                    Plaintiff,<br><br>v.<br><br>US Airways, Inc.,<br><br>                    Defendant. | No. CV-14-01672-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 64) and the parties' competing statements of facts and briefs. Also before the Court are the parties' cross-motions to exclude expert testimony (Docs. 62, 63) and accompanying briefs. For the reasons that follow, Defendant's Motion for Summary Judgment will be granted, rendering moot the motions to exclude expert testimony.

**I.    INTRODUCTION**

US Airways, Inc. ("US Airways") hired Jonathan Paolino in April 2013. Months later, a manager thought he saw Paolino asleep in the breakroom and fired him. Paolino now claims he was fired because of his disability: an anxiety disorder that sometimes manifests in a "dissociative state" resembling sleep. US Airways moves for summary judgment on the grounds that (1) the manager did not know of Paolino's disability and (2) even if he did, it was not the reason he fired Paolino.

## II. LEGAL STANDARD

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the burden of showing the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant shows an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion. The party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial" and may not rest upon the pleadings. *Anderson*, 477 U.S. at 256. To carry this burden, the nonmoving party must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, must not weigh the evidence or assess its credibility, and must draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

### III. MATERIAL FACTS

The following facts are drawn from the undisputed portions of US Airways' statement of facts (Doc. 65), Paolino's controverting statement of facts (Doc. 70), and parts of the record.

#### A. Paolino's Disability

In 2012, Paolino was diagnosed with a general anxiety disorder. (Doc. 70 at ¶ 52.) This disorder can cause unexpected panic attacks. (*Id.* at ¶¶ 53-54.) Sometimes these attacks feel like a heart attack. (Doc. 65-1 at 16.) Other times they result in a temporary change in or loss of consciousness, known as a "dissociative state." (Doc. 70 at ¶ 49.) Since diagnosis, Paolino has been receiving psychiatric treatment. (*Id.* at ¶¶ 52, 55.)

#### B. Paolino's Employment

US Airways hired Paolino in April 2013. (Doc. 65 at ¶ 1.) At a pre-employment drug screening, Paolino disclosed that he was taking medication for his anxiety disorder. (Doc. 70 at ¶ 57.) He also told his immediate supervisor, Michelle Paxton, about his medication. (*Id.* at ¶¶ 58, 63.)

US Airways management hierarchy was organized as follows. Paxton reported to various shift managers, including Jesse Stewart. (*Id.* at ¶ 58.) These shift managers reported to senior manager Tim James. (*Id.*) James reported to director John Daley. (Doc. 65 at ¶¶ 5, 7.) Paolino received assignments from Paxton, shift managers, and James, and therefore considered them all his direct supervisors. (Doc. 70 at ¶¶ 59-60.)

In May 2013, Paolino had a panic attack. (Doc. 65 at ¶ 39.) He felt like he was having a heart attack, so Paxton called paramedics. (*Id.* at ¶ 40; Doc. 70 at ¶ 66.) After the attack, Paolino was told to take the rest of the day off. (Doc. 70 at ¶ 67.)

The next several months were less eventful. Paolino experienced anxiety relating to upcoming dental surgery and requested leave. (*Id.* at ¶¶ 72-73.) Paxton teased him about this anxiety and asked him to return to work early. (*Id.* at ¶¶ 74-75.) Paolino voiced his concerns to a Human Resources manager. (*Id.* at ¶¶ 71, 76.) Paolino did not suffer a panic attack comparable to the May 2013 incident during this time. (*Id.* at ¶ 70.)

The incident preceding termination occurred on December 16, 2013. (Doc. 65 at ¶ 9.) While James was conducting a meeting, Daley's assistant interrupted and summoned James and Stewart to the employee breakroom. (*Id.* at ¶¶ 8-9.) In the breakroom, James saw Paolino reclining in a chair near a wall. (*See id.* at ¶ 11.) His eyes were closed, and his head was back. (*Id.*) James called Paolino's name, but he did not respond. (Doc. 65-3 at 9.) James then tapped Paolino's arm, at which point he became alert or startled. (*Id.* at 11-12.) It took a moment for Paolino to come to his senses and understand who was standing in the room, and he seemed in shock. (Doc. 70 at ¶ 79.) James then sent Paolino home for the day. (*Id.* at ¶ 80.)

Later that day, Paolino emailed James, Paxton, Stewart, and another shift manager about the incident. (Doc. 65 at ¶ 15; Doc. 70 at ¶ 15.) The email stated in full:

> I wanted to apologize for the incident that happened in the temporary break room in conference room E. I understand that falling asleep no matter for how short or long a time anywhere at work is not only against company policy but also inexcusable and reflects bad not only on myself but the department as a whole and wanted to simply say this has never happened to me before in my 7+ months with the company. My recollection of the event was that I completed the audit of the December 1st folder returned it to the file cabinet, proceeded back to my desk, locked my computer at 10:08 and proceeded to the break room to check my personal email. The last thing I recall after sitting down was opening an email regarding an amazon.com order and logging in it check the shipping status. I realize my actions most likely will result in my termination as there is no excuse for falling asleep at your place of employment. If this is the case I will return my company property promptly and without issue. If you decide to not terminate me for this incident I can promise I will do everything in my power to ensure that this never occurs again. Again I want to profusely apologize and express how sorry I am for the event and the embarrassment it brought upon myself and the department.

(Doc. 65 at ¶ 15.)

The next day at work, Stewart told Paolino he did not think Paolino had been sleeping in the breakroom the previous day. (Doc. 70 at ¶ 84.) Paolino agreed and said he had suffered a panic attack. (*Id.*) Stewart said Paolino would probably be suspended

but not fired. (*Id.*)[1] Near the end of the day, Paolino met with James, Stewart, and Paxton in James's office. (*Id.* at ¶ 86.) There, James directed Stewart to hand Paolino a letter signed by a shift manager. (Doc. 65-1 at 31.) The letter terminated Paolino for sleeping on the job in violation of company policy. (*See* Doc. 70 at ¶ 86.)

### C. The Termination Decision

#### 1. Who made the decision

James testified that he alone made the decision to terminate Paolino and did not discuss the decision with anyone else—including Stewart and Paxton—before making it. (Doc. 65-2 at 2; Doc. 65-3 at 14.) Stewart testified he was not involved in the decision. (Doc. 65-4 at 4.) Paxton testified she was not involved in the decision. (Doc. 65-6 at 4.) James further testified that he directed a shift manager to draft the termination letter. (Doc. 65-3 at 15.)

In his controverting statement of facts, Paolino "disputes" that James was the sole decision maker. (*Compare* Doc. 65 at ¶ 29 *with* Doc. 70 at ¶ 29.) But he identifies no specific portion of the record rebutting James's testimony, as required by Local Rule LRCiv 56.1(b). Instead he argues that (1) the statement that James was the decision maker is an improper legal conclusion, and (2) James's decision was based on inaccurate or insufficient information. (*See* Doc. 70 at ¶ 29.) These arguments fail. The identity of the decision maker is an issue of fact, not law, and is not affected by whether the decision was based on adequate information. Therefore it is undisputed, for purposes of summary judgment, that James made the sole decision to terminate Paolino.

---

[1] There is conflicting testimony as to whether Stewart actually made these remarks. (*Compare* Doc. 70-3 at 42 *with* Doc. 65-4 at 11.) But the Court views the evidence in the light most favorable to Paolino.

### 2. What was known to the decision maker

James testified that when he saw Paolino in the breakroom, he thought Paolino was asleep. (Doc. 65-2 at 2.) James considered sleeping at work to be an immediately terminable offense. (Doc. 70 at ¶ 92.)

James also testified that he reviewed Paolino's overall work history before firing him. (Doc. 65-3 at 17-18.) James found Paolino's work product to contain errors. (Doc. 65-2 at 2.) James had previously counseled Paolino about professionalism after Paolino criticized the manner in which James conducted a training presentation. (*Id.*) Further, James knew that Stewart had counseled Paolino about professionalism after Paolino referred to an African-American co-worker as "Mrs. Butterworth." (*Id.*)

In his controverting statement of facts, Paolino "disputes" that James reviewed Paolino's overall work history. (*Compare* Doc. 65 at ¶¶ 22-27 *with* Doc. 70 at ¶¶ 22-27.) But again, he identifies no specific portion of the record rebutting James's testimony, as required by LRCiv 56.1(b). Indeed, for the most part he cites no portion of the record at all. (*See* Doc. 70 at ¶¶ 22-27.) Instead he objects that evidence of his work history is irrelevant because James considered sleeping at work to be an immediately terminable offense. (*See id.*) This objection fails. Paolino's work history is relevant because James said he reviewed it before deciding to fire him. Nothing indicates otherwise. Therefore it is undisputed, for purposes of summary judgment, that James reviewed Paolino's work history before terminating him.

### 3. What was not known to the decision maker

James testified that he did not know Paolino suffered from an anxiety disorder or panic attacks, even though he knew Paolino took some sort of medication and he knew the paramedics had been called in May 2013. (Doc. 65-2 at 3; Doc. 65-3 at 16.) Paolino does not remember ever telling James about his anxiety disorder. (Doc. 65-1 at 21.) Paolino assumed Paxton told James about his disorder, but Paxton testified she never did. (*Id.* at 29; Doc. 65-7 at 2.)

James further testified that he did not know Paolino experienced "dissociative" episodes. (Doc. 65-2 at 3.) Paolino does not remember telling James, or anyone at US Airways, about his dissociative episodes. (Doc. 65-1 at 28.) Prior to termination, Paolino did not tell James that the December 16 incident in the breakroom was a medical episode. (*Id.* at 31.)

In his controverting statement of facts, Paolino "disputes" James's ignorance about his anxiety disorder and dissociative episodes. (*Compare* Doc. 65 at ¶¶ 47, 51 *with* Doc. 70 at ¶¶ 47, 51.) Specifically, Paolino argues that statements about James's ignorance (1) are irrelevant, (2) lack evidentiary foundation, (3) are improper legal conclusions, (4) ignore James's affirmative duty to investigate discrimination or disabilities, and (5) ignore the fact that Paolino told other managers about his disorder. (*See* Doc. 70 at ¶¶ 47, 51.)

The first four arguments are easily dismissed. Whether James knew of Paolino's disability is (1) relevant to Paolino's claim of disability discrimination, (2) founded on James's testimony, (3) an issue of fact, not law, and (4) not affected by whether James should have investigated the matter.

The fifth argument deserves more consideration and will be addressed in the "Analysis" section below.

### 4. Whether similar decisions had been made

James testified that he knows of only one other employee in Paolino's department who slept at work: Bridget Alarcon, who fell asleep during a training class in August 2012. (Doc. 65-2 at 2.) James fired her as a result. (*Id.*) He had no reason to believe she had a disability. (*Id.*)

In his controverting statement of facts, Paolino "disputes" this incident. (*Compare* Doc. 65 at ¶¶ 34-37 *with* Doc. 70 at ¶¶ 34-37.) But he identifies no specific portion of the record rebutting James's testimony, as required by LRCiv 56.1(b). (Doc. 70 at ¶¶ 34-37.) Indeed, he cites no portion of the record at all. (*Id.*) Instead he objects that statements

about Alarcon's termination (1) are irrelevant, (2) lack evidentiary foundation, and (3) fail to specify whether James reviewed Alarcon's overall work history.

These objections fail. Alarcon's termination is relevant to whether Paolino was terminated for sleeping on the job. The circumstances surrounding Alarcon's termination are founded on James's testimony. And the admissibility of this evidence does not turn on whether James reviewed Alarcon's work history. Therefore it is undisputed, for purposes of summary judgment, that James fired the only other employee in Paolino's department who he thought slept at work.

## IV. ANALYSIS

Paolino claims he was fired "on the basis of disability," in violation of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12112(a). On summary judgment, Paolino's claim proceeds under the familiar *McDonnell Douglas* three-step burden-shifting framework: (1) Paolino must first establish a prima facie case of discrimination; (2) if he does, US Airways must then articulate a legitimate nondiscriminatory reason for its conduct; and (3) if it does, Paolino must then demonstrate that the articulated reason is a pretext for discrimination. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

### 1. Prima facie case

To state a prima facie case of ADA discrimination, Paolino must show that (1) he is a disabled person within the meaning of the ADA, (2) he was able to perform the essential functions of the job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). The requisite degree of proof is "minimal," and Paolino "need only offer evidence which gives rise to an inference of unlawful discrimination." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (in context of age

discrimination and Title VII retaliation claims); *see also Kinney v. Emmis Operation Co.*, 291 F. App'x 789, 790 (9th Cir. 2007) (applying this standard to ADA claim).

US Airways contends Paolino has not satisfied the third element of the prima facie case because there is no evidence he was fired "because of" his anxiety disorder. However, given the low threshold required at this first step of the *McDonnell Douglas* framework, the Court assumes without deciding that Paolino has established a prima facie case. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) (taking this approach with respect to age discrimination claim).

### 2. Legitimate nondiscriminatory reason

The burden now shifts to US Airways to articulate a legitimate nondiscriminatory reason for firing Paolino. US Airways has articulated such a reason: James fired Paolino for sleeping on the job.

### 3. Pretext

The burden now shifts back to Paolino to demonstrate that this articulated reason was merely a pretext for discrimination. The evidentiary threshold is higher at this step than at the prima facie case. *Snead*, 237 F.3d at 1094 (finding evidence insufficient to show pretext even though it was sufficient for prima facie case); *see also Finical v. Collections Unlimited, Inc.*, 65 F. Supp. 2d 1032, 1045 (D. Ariz. 1999) (indirect evidence of pretext must be "specific" and "substantial" to withstand summary judgment). Paolino has not carried this burden.

#### a. Lack of evidence that the decision maker was aware of Paolino's disability

As an initial matter, there is no specific evidence that James knew about Paolino's anxiety disorder at the time of termination. James affirmatively testified that he did not know of Paolino's disorder, and there is no evidence that anyone informed James of Paolino's disorder. Without such knowledge, James's decision could not have been a pretext for disability discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003); *see also Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013)

("[A]n employee cannot be considered to have been fired 'on the basis of disability' unless the individual decision-maker who fired the individual had knowledge of that disability." (citations omitted)).

Paolino argues that knowledge of his anxiety disorder may be "imputed" to James because Paolino mentioned his disorder to several US Airways employees, including his immediate supervisor. In support of this theory, Paolino relies on the Ninth Circuit's opinion in *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989).

Paolino's reliance on *Kimbro* is misplaced. Although the facts in *Kimbro* are analogous—the employee's supervisor knew of the employee's disability while upper management did not—the legal conclusion is inapposite. The *Kimbro* court held that, because the supervisor knew of the disability, the employer was responsible for failing to accommodate the disability. 889 F.2d at 874. That holding does not apply to discriminatory discharge cases such as this one, where the question is whether the decision maker acted with discriminatory intent. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1184 (11th Cir. 2005) (distinguishing *Kimbro* on this basis). James cannot have intended to discriminate on the basis of something unknown to him. To argue otherwise "simply defies logic." *Id.*

Paolino also argues that James must have known of his anxiety disorder because James saw external signs of an underlying disorder. Specifically, James saw Paolino take some sort of medication, and he knew paramedics were called for Paolino in May 2013. But these instances show only that James knew Paolino had a health issue, not that James knew Paolino had a disability.

### b. Lack of evidence that the decision maker was motivated by Paolino's disability

Even if James knew of Paolino's anxiety disorder, there is no evidence that it was the reason James fired him. Quite the contrary, all the evidence indicates the termination decision was motivated by James's sincere belief that Paolino was sleeping on the job. When James entered the breakroom, he saw Paolino reclining in a chair, head back, eyes

closed, and unresponsive until James tapped his arm. Later that day, Paolino sent James an email in which he apologized for "falling asleep" and did not mention any disorder. Naturally, James believed Paolino. And the following day, he gave Paolino the same consequence that he gave the other employee who slept at work: termination.

Paolino's contention that he was not sleeping on the job is beside the point. Courts "only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)). What matters is the sincerity of James's belief, not its accuracy.

Paolino attempts to challenge James's sincerity in several ways. First, Paolino says that after the breakroom incident, he told Stewart that his sleep-like state was likely a panic attack. But Paolino's statement to Stewart does not relate to *James's* belief about the incident, since Stewart was not involved in the termination decision and there is no evidence that Stewart communicated Paolino's statement to James.

Paolino also identifies an alleged inconsistency in James's testimony: James said he considered sleeping at work to be an immediately terminable offense but reviewed Paolino's work history before firing him. These statements are not actually inconsistent. A manager is free to review an employee's work history when considering whether to fire him for an immediately terminable offense. Moreover, any inconsistency here would be between two nondiscriminatory reasons for firing Paolino and therefore innocuous.

Finally, Paolino identifies an ambiguity in US Airways' policy. Company policy prohibits sleeping "on the job," while other parts of the policy use terms such as "on duty" and "at work" without defining such terms. But Paolino does not explain how this ambiguity relates to the sincerity of James's belief that Paolino violated company policy.

## V.     CONCLUSION

US Airways claims Paolino was fired for sleeping on the job, and Paolino has produced no evidence that the decision maker was aware of, much less motivated by, Paolino's disability. Therefore the record, taken as a whole, could not lead a rational trier of fact to find for Paolino with respect to his disability discrimination claim. Because this action is entirely resolved by summary judgment, the parties' cross-motions to exclude expert testimony will be denied as moot.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 64) is granted.

IT IS FURTHER ORDERED that Defendant's Motion to Exclude Expert Opinion Testimony (Doc. 62) and Plaintiff's Motion to Exclude Report and Testimony of Defendant's Expert (Doc. 63) are denied as moot.

IT IS FURTHER ORDERED that the Clerk shall enter judgment in favor of Defendant and against Plaintiff. The Clerk shall terminate this case.

Dated this 26th day of January, 2016.

Neil V. Wake
United States District Judge